UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARL STEPHEN DUBOSE,

  Plaintiff,

 v.

R. WALTER,

  Defendant.

Case No. 18-cv-01875-YGR (PR)

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Carl Stephen Dubose brings the instant *pro se* action under 42 U.S.C. § 1983, alleging that he was subjected to improper force by Defendant Deputy R. Walter of the Alameda County Sheriff's Office ("ACSO") while Plaintiff was a pretrial detainee at Santa Rita Jail ("SRJ") on December 18, 2016.

In an Order dated August 8, 2018, the Court found that Plaintiff's allegations in his complaint stated a cognizable excessive force claim against Defendant, and it dismissed all other claims. Dkt. 9 at 2.

The parties are presently before the Court on Defendant's motion for summary judgment. Dkt. 16. Defendant moves for summary judgment on the ground that he is entitled to judgment as a matter of law because Plaintiff failed to properly exhaust all available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *Id.* at 1.[1] Although Plaintiff was given the opportunity to file an opposition to Defendant's motion for summary judgment, he did not do so.

Having read and considered the papers submitted, and being fully informed, the Court DENIES Defendant's motion for summary judgment.

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

## II. BACKGROUND

### A. Factual Summary of Excessive Force Claim from Complaint

Plaintiff alleges that on December 18, 2016, he was subjected to excessive force by Defendant. Dkt. 1 at 4. Specifically, Plaintiff alleges that Defendant requested that Plaintiff turn his shirt around during breakfast. *Id.* Plaintiff allegedly forgot to turn his shirt around while he was eating breakfast, so Defendant removed him from his pod and took him to an isolation cell. *Id.* On the way to the isolation cell, Plaintiff alleges that Defendant grabbed Plaintiff's right wrist and twisted it, telling Plaintiff to "cuff up." *Id.* Plaintiff alleges that he had surgery on his right wrist, making it sensitive when it is twisted the wrong way or roughly grabbed. *Id.* Plaintiff claims that he "instinctively turned [his] body to relieve the pressure [on his] wrist." *Id.* Defendant Walter then "hit [Plaintiff] [with a] right hand punch to [his] mouth followed by an elbow strike that resulted in [him] lo[]sing consciousness." *Id.* When Plaintiff awoke, he felt a sharp pain in his legs. *Id.* He was handcuffed, bleeding from the mouth, and surrounded by deputies yelling at him to stop resisting. *Id.*

### B. Exhaustion Under the PLRA

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." *Id.* at 524; *Booth v. Churner*, 532 U.S. 731, 739-40 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Booth*, 532 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative process that could provide

some sort of relief on the complaint stated, but no money." *Id.* at 739.

The PLRA requires proper exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, compliance with prison or jail grievance procedures is required by the PLRA to properly exhaust. *Id.* The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84.

Section 1073 of Title 15 of the California Code of Regulations provides county jail inmates with a right to appeal and have resolved grievances relating to their confinement. Inmate grievances at SRJ are governed by ACSO's Detention and Corrections Policy and Procedures ("ACSO Policy"). Kennedy Decl. ¶ 1. In accordance with ACSO Policy, an inmate may file a grievance related to any issue directly affecting the conditions of his or her confinement or regarding any incident of sexual assault or harassment, or the potential threat thereof. *Id.* ¶ 2. Inmates are advised of the grievance procedure through ACSO's Inmate Rules and Information book, inmate publications, and an admission-orientation video. *Id.*, Ex. A. When an inmate wishes to submit a grievance, he or she must request an Inmate Grievance form (also known as an "ML-51 form") from an ACSO deputy. *Id.* ¶ 3. Grievance forms are made readily available to all inmates and deputies are obliged to provide these forms at their earliest convenience. *Id.*

In most instances, a responding deputy will first attempt to resolve a grievance informally to the inmate's satisfaction. *Id.* ¶ 4. However, if the deputy is unable to resolve the grievance, the inmate may file a formal written grievance by completing the ML-51 form and returning it to a deputy. *Id.* ¶ 5. The grievance form must be filled out completely and legibly and state the exact nature of the grievance and all facts that substantiate the complaint. *Id.* ¶ 6. The deputy providing the form is required to assign the grievance a tracking number, and print his or her name and badge number. *Id.* All original documents submitted by an inmate to jail staff in connection with a grievance are kept in a grievance file associated with the inmate's person file number ("PFN") and grievance tracking number. *Id.* Once the Grievance Unit receives the grievance, a deputy

3

from the Grievance Unit is assigned to review the grievance and conduct an initial investigation of the claims. *Id.* ¶ 8. A written decision and explanation regarding the grievance is then provided to the inmate on the Inmate Grievance Response form. *Id.*

An inmate at SRJ has the right to appeal any grievance response decision to an Appeals Officer. *Id.* ¶ 9. In addition to the information provided in ACSO's Inmate Rules and Information book, inmate publications, and admission-orientation videos, inmates are informed of the right to appeal a grievance decision of the Grievance Response form itself. *Id.* ¶¶ 2, 9, 18. Next to the line calling for the inmate's signature is a box to check requesting to appeal the grievance decision. *Id.* ¶ 9. Alternatively, an inmate may check another box indicated that he or she does not wish to pursue an appeal. *Id.* An inmate's refusal to check either box or sign the Inmate Grievance Response form is construed as an automatic appeal. *Id.* Completed grievance packets are then forwarded to the Commanding Officer or his or her designee for signature and final disposition. *Id.*, Ex. A. A copy of the final disposition (response) and any appropriate paperwork is then forwarded to the inmate. *Id.*

### C. Factual Summary Relating to Exhaustion

On January 26, 2018, Plaintiff submitted the relevant grievance in this action, Grievance Number 18-0235, which alleged that on December 18, 2016, Defendant "assault[ed]" Plaintiff during the aforementioned altercation described above.[2] Kennedy Decl. ¶ 15, Ex. B. Deputy K. Svendsen received the grievance from Plaintiff on January 27, 2018 and indicated that it could not be resolved at the Deputy Level. *Id.*, Ex. B. The Grievance Unit investigated the claim under the supervision of Sergeant Patrick L. Kennedy, who is assigned to oversee the SRJ Grievance Unit. *Id.* ¶¶ 1, 15, 17. The investigation found that the events described in the Incident Report demonstrated that the use of force was appropriate "to prevent [Plaintiff] from assaulting the

---

[2] The Court notes that on March 10, 2018, Plaintiff submitted a second grievance form—Grievance Number 18-0595—alleging that on December 19, 2016, he was place in an unsanitary cell. Kennedy Decl., Ex. C. The record shows that Grievance Number 18-0595 was denied on April 3, 2018, that Plaintiff appealed the denial by marking "yes" when asked if he wished to appeal the ruling, and that the appeal was denied on April 8. 2018. *See id.* However, Grievance Number 18-0595 is not relevant to the remaining excessive force claim in this action. Therefore, the Court need not consider this grievance.

4

1 deputy" and that the "deputy used the force he felt was necessary at the time in order to overcome [Plaintiff's] resistance to gain [his] compliance." *Id.*, Ex. B. Thus, Grievance Number 18-0235 was denied on February 14, 2018. *Id.* On February 18, 2018, Plaintiff reviewed and signed the Inmate Grievance Response form denying his grievance. *See id.; see also id.* ¶ 18. On the line reading "Do you wish to appeal this ruling?" Plaintiff marked "No." *Id.* The record shows that Plaintiff admitted in his complaint form in the instant matter that he did not appeal the denial of his excessive force grievance, by stating as follows: "I did not request an appeal because the grievance was denied and I felt they would just deny the appeal also." Dkt. 1 at 1. The record also shows that on February 21, 2018, the commanding officer, Lt. R. Bowers, reviewed the grievance and next to "Recommendation," he indicated that it was "DENIED." Kennedy Decl., Ex. B.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence

5

1  showing that there is something in his particular case that made the existing and generally
2  available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of
3  proof remains with defendants, however. *Id.* "If material facts are disputed, summary judgment
4  should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendant has presented a declaration from Sergeant Kennedy from the SRJ Grievance Unit and attached supporting exhibits. Dkt. 16-1.

As noted, Plaintiff has not filed an opposition to Defendant's motion for summary judgment. However, because the original complaint is verified, dkt. 1 at 3, the Court will construe it as an opposing affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

## IV. DISCUSSION

Defendant argues that Plaintiff failed to exhaust all administrative remedies as to his excessive force claim. Dkt. 16 at 8-9. Specifically, Defendant claims that while Plaintiff submitted a relevant grievance complaining of Defendant's alleged use of excessive force—Grievance Number 18-0235—he failed "complete the procedure as required for satisfaction of the PLRA's exhaustion requirement." *Id.* Specifically, Defendant points out the Plaintiff indicated on his excessive force grievance form that he chose not to appeal the denial of that grievance. Kennedy Decl. ¶ 18, Ex. B. Thus, Defendant argues that, prior to initiating this action, Plaintiff did not properly exhaust any alleged wrongful conduct by Defendant with respect to the alleged excessive force incident on December 18, 2016. Dkt. 16 at 9.

With regard to the first step of the *Albino* burden shifting test, Defendant has sufficiently shown the existence of an available administrative remedy through SRJ's grievance process. The Court has reviewed the aforementioned relevant excessive force grievance—Grievance Number 18-0235—and agrees with Defendant's assessment that the record shows that Plaintiff chose not to appeal the denial of that grievance. *See* Kennedy Decl., Ex. B.

6

Next, the burden is shifted to Plaintiff to show that "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).

As explained above, Plaintiff has declared, under penalty of perjury, that he attempted to exhaust his administrative remedies by filing a grievance that was denied, but that he choose not to appeal the denial of his excessive force grievance because "[he] felt they would just deny the appeal also." Dkt. 1 at 1. Thus, it seems that Plaintiff claimed that such an appeal was "obviously futile." *See Paramo*, 775 F.3d at 1191. The Court points out that some truth exists to Plaintiff's allegation because that the record shows that after he chose not to appeal the denial, his grievance was forwarded to the Commanding Officer, Lt. Bowers, who still recommended that the grievance be "DENIED" on February 21, 2018. Kennedy Decl., Ex. A. Upon shifting the burden to Plaintiff, the Court, viewing the evidence in the light most favorable to Plaintiff, finds that he has sufficiently demonstrated that the prison's administrative remedies were "effectively unavailable" to him because it was evident that any effort to appeal was "obviously futile." *See Paramo*, 775 F.3d at 1191.

In contrast, the evidence produced by Defendant—the absence of Plaintiff's appeal of the denial—is insufficient to carry their ultimate burden of proof in light of Plaintiff's verified factual allegations. *See Paramo*, 775 F.3d at 1192 (finding that the declaration submitted by defendant did "nothing to rebut [the plaintiff]'s evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case"). In fact, in his motion, Defendant does not even mention the fact that the Commanding Officer recommended to deny the excessive force grievance. *See* Dkt. 16.

At this juncture, Plaintiff's evidence—that he attempted to file an excessive force grievance which was denied and his claim that any effort to appeal the denial was "obviously futile"—is sufficient to defeat Defendant's motion for summary judgment. *See Nunez v.* Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010). Accordingly, Defendant is not entitled to summary judgment based on the failure to exhaust administrative remedies at this time, and their motion is

7

DENIED on this ground.

## V. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Defendant's motion for summary judgment is DENIED. Dkt. 16.

2. The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement conference. The Court finds that a referral is in order as to Plaintiff's excessive force claim. Thus, this case is REFERRED to Magistrate Judge Robert M. Illman for a settlement conference. The conference shall take place within **sixty (60) days** of the date of this Order, or as soon thereafter as is convenient to the Magistrate Judge's calendar. Magistrate Judge Illman as shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within **ten (10) days** after the conclusion of the conference, file with the Court a report of the result of the conference. The Clerk of the Court shall provide a copy of this Order to Magistrate Judge Illman.

3. If this matter does not settle, then this case will proceed to trial.

4. This Order terminates Docket No. 16.

IT IS SO ORDERED.

Dated: April 16, 2019

_____
YVONNE GONZALEZ ROGERS
United States District Judge